UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| S.G., on behalf of herself and on behalf of her child, K.B., <br><br> PLAINTIFFS, <br><br> -against- <br><br> SUCCESS ACADEMY CHARTER SCHOOLS, INC.; EVA MOSKOWITZ in her individual and official capacity as Chief Executive Officer of Success Academy Charter Schools, Inc.; SUCCESS ACADEMY BRONX 2; ANGELA INSLEE in her individual and official capacity as Principal of Success Academy Bronx 2; and JAVERIA KHAN, in her individual and official capacity as Managing Director of Schools for Success Academy Charter Schools, Inc., <br><br> DEFENDANTS. | Civil Action No. <br><br> **COMPLAINT** <br><br> 18 CV 2484 |

## PRELIMINARY STATEMENT

1. This action is being filed pursuant to the Individuals with Disabilities Education Improvement Act ("IDEA"), 20 U.S.C. § 1415, *et seq.*; the due process clause of the 14th Amendment of the U.S. Constitution; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504") and the regulations promulgated thereunder.

2. Plaintiffs bring this action to enforce K.B.'s "stay put" rights under the IDEA.

3. An impartial hearing officer issued an interim order stating that "the Student's pendency placement is the fourth grade class in Success Academy 2 with full-time crisis paraprofessional the related services of individual and group counseling each once a week for thirty minutes per session."

1

4. Pursuant to the pendency order Plaintiff K.B. must be placed back into his "current educational placement" of a fourth grade class, while the special education dispute is pending. Defendants are refusing to return K.B. to his placement in fourth grade.

5. In order to safeguard K.B.'s rights under the IDEA, Plaintiffs bring this action to compel Defendants to comply with the interim order of pendency. Plaintiffs seek a temporary restraining order, preliminary and permanent injunction mandating such compliance, damages, and related relief, as well as attorneys' fees and litigation costs under the IDEA.

## JURISDICTION AND VENUE

6. This Court has jurisdiction under 28 U.S.C. § 1331, in that claims are asserted under the laws of the United States; 28 U.S.C. § 1343(a), claims are asserted under laws providing for the protection of civil rights, 20 U.S.C. § 1415, 42 U.S.C. § 12182, and 29 U.S.C. § 794, *et seq*.

7. This Court has jurisdiction over Plaintiff's pendent State law claims pursuant to 28 U.S.C. § 1367. Plaintiff also seeks declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

8. Venue lies in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) as the judicial district in which Defendants are situated and/or reside.

## PARTIES

9. Plaintiff K.B. is a ten year old child with a disability. He resides in Brooklyn with his mother, S.G., and attends Success Academy Bronx 2. He began the school year and fourth grade but was demoted to the third grade on January 5, 2018, over his mother's objection and without the process required by the IDEA.

10. K.B. has been diagnosed with a seizure disorder, Attention Deficit Hyperactivity Disorder (ADHD), and Oppositional Defiant Disorder (ODD). When he was one year of age, K.B. was evaluated and found eligible to receive early intervention services through the New York State Department of Health. At about three years of age, K.B. was evaluated by the New York City Department of Education (DOE) and was found eligible for special education services as a preschool student. When K.B. transitioned to kindergarten, S.G. secured a seat for K.B. at Success Academy Bronx 2 and he has attended this school ever since. K.B. has been receiving special education services at school since entering in kindergarten.

11. Plaintiff S.G. is K.B.'s mother.

12. Upon information and belief, according to Defendants, SUCCESS ACADEMY CHARTER SCHOOLS, INC. ("SACS") is a non-profit corporation organized under the laws of the State of Delaware. SACS operates the largest public charter school network in New York City and provides management and administrative support to schools within its network. Admission is open to all New York State children and SACS operates 46 schools serving 15,500 students in Manhattan, Brooklyn, Queens and the Bronx. SACS is a recipient of state and federal financial assistance to provide educational services to the students enrolled in its schools. Its principal place of business is located at 95 Pine Street, 6th Floor, New York, New York.

13. Upon information and belief, Defendant, EVA MOSKOWITZ, is the Chief Executive Officer of SACS and, as such, is entrusted with the specific powers and duties to ensure all SACS schools comply with applicable federal and state laws.

14. Defendant SUCCESS ACADEMY BRONX 2 ("Bronx 2") is a charter school in the network operated by SACS. The school is located at 450 St. Pauls Place, Floor 5, Bronx, NY 10456. To the extent that Success Academy Prospect Heights is a separate corporate entity, it is controlled and operated by Success Academy.

15. Defendant ANGELA INSLEE, is an employee and agent of SACS and/or Bronx 2. Angela Inslee has been the Principal of Bronx 2 during all times relevant to this complaint.

16. Defendant JAVERIA KHAN, is the Managing Director of Schools of SACS and is an employee and agent SACS. Ms. Khan has been the Managing Director of Schools of SACS during all times relevant to this complaint.

17. Defendants SACS and Bronx 2 receive federal funds for the provision of general and special education services to children who attend Defendants' schools.

## LEGAL FRAMEWORK

*Individuals with Disabilities Education Act*

18. The Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §1400 *et seq.*, governs how states and localities provide early intervention, special education, and related services to children with disabilities. Congress enacted the IDEA to ensure that students with disabilities have meaningful access to public education. States who participate in the IDEA receive substantial federal funds in exchange for their agreement to provide a free appropriate public education to all disabled children in the state, and to comply with the IDEA's procedural and substantive mandates.

19. New York has chosen to participate in the IDEA framework, and has established procedures for providing special educational services to children with disabilities, set forth at N.Y. Educ. Law § 4401 et seq.

20. The primary mechanism for ensuring implementation of the IDEA's mandate of a free appropriate public education is the Individualized Education Plan ("IEP"). An IEP is a written statement, prepared for every child with a disability that sets forth the special education and related services, supplementary aids and services, and program modifications or supports for school personnel, to be provided to the child, or on behalf of the child.

21. IDEA defines a child with a disability as "a child (i) with intellectual disabilities, hearing impairments (including deafness), speech or language impairments, visual impairments (including blindness), serious emotional disturbance (referred to in this chapter as "emotional disturbance"), orthopedic impairments, autism, traumatic brain injury, other health impairments, or specific learning disabilities; and (ii) who, by reason thereof, needs special education and related services." 20 U.S.C. §1401(3)(A).

22. Under IDEA, states must make available "a free appropriate public education . . . to all children with disabilities residing in the State between the ages of 3 and 21, inclusive, including children with disabilities who have been suspended or expelled from school." 20 U.S.C. §1412(a)(1)(A).

23. IDEA defines "free and appropriate education" as: "special education and related services that (A) have been provided at public expense, under public supervision and direction, and without charge; (B) meet the standards of the State educational agency; (C) include an appropriate preschool, elementary school, or secondary school

education in the State involved; and (D) are provided in conformity with the individualized education program required under section 1414(d) of this title." 20 U.S.C. §1401(9).

24. The IDEA provides due process protections for students with disabilities. Parents of students with disabilities may request an impartial hearing relating to the identification, evaluation or educational placement of a child with a disability, or to the provision of a free and appropriate public education to the child. 20 U.S.C. §1415. An impartial hearing decision may be appealed to the State educational agency. 20 U.S.C. §1415(g)(1).

25. The IDEA and the New York State Education Law require that a student remain or "stay put" in his or her then current educational placement ("pendency placement"), unless the student's parents and the board of education otherwise agree, during the pendency of any proceedings relating to the identification, evaluation or placement of the student. 20 U.S.C. § 1415(j); Educ. Law §§ 4404(4), 4410(7)(c); 34 CFR 300.518(a); 8 NYCRR 200.5(m).

26. All children with disabilities who attend Defendants' charter schools and their parents retain all of their rights under the IDEA. 34 C.F.R. § 300.209.

*Rehabilitation Act*

27. The Rehabilitation Act of 1973 prohibits discrimination on the basis of disability in programs receiving federal financial assistance. 29 U.S.C. §701 *et seq.*

28. Section 504 of the Rehabilitation Act, codified at 29 U.S.C. §794, mandates that "[n]o otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be

excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

29. The definition of "individual with a disability" for the purposes of Section 504 is cross-referenced to the definition found in the Americans with Disabilities Act ("ADA"): an individual with a disability is a person with a physical or mental impairment that substantially limits one or more major life activities of such individual; with a record of such an impairment; or who is regarded as having such an impairment. 42 U.S.C. §12102(1).

30. 34 C.F.R. § 104.33(a) requires that recipients of federal funds who operate elementary or secondary schools must "provide a free appropriate public education to each qualified handicapped person who is in the recipient's jurisdiction, regardless of the nature or severity of the person's handicap."

31. Under 34 C.F.R. § 104.33(d), a recipient "may not exclude any qualified handicapped person from a public elementary or secondary education."

32. Under 34 C.F.R. § 104.34(a), a recipient "shall provide for the education of each qualified handicapped person in its jurisdiction with persons who are not handicapped to the maximum extent appropriate to the needs of the handicapped person. A recipient shall place a handicapped person in the regular educational environment operated by the recipient unless it is demonstrated by the recipient that the education of the person in the regular environment with the use of supplementary aids and services cannot be achieved satisfactorily."

***Americans with Disabilities Act***

7

33. Title II of the ADA, 42 U.S.C. §12131 *et seq.*, prohibits discrimination based upon disability by public entities.

34. Pursuant to 42 U.S.C. §12132, it is unlawful for a qualified individual with a disability, by reason of such disability, to be excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or subjected to discrimination by any such entity.

35. Disability under the ADA is defined as a physical or mental impairment that substantially limits one or more major life activities, a record of such an impairment, or being regarded as having such an impairment. 42 U.S.C. §12102(1).

36. The term "qualified individual with a disability" is defined as an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. §12131(2).

37. 28 C.F.R. §35.130(b)(3) bars public entities from utilizing methods of administration that "have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability."

38. 28 C.F.R. §35.130(h) prohibits public entities from imposing safety requirements based on "mere speculation, stereotypes or generalizations about individuals with disabilities."

## FACTS

39. K.B. is a ten year old student with a disability and currently attends Bronx 2, a New York State charter school.

40. The most recent IEP for K.B. assigns him a classification of Other Health Impairment, and recommends a program of a special class with a staffing ratio of 12 students to one teacher in a community school. The IEP also recommends K.B. receive the related services of a crisis management paraprofessional, and counseling services in one group session of thirty minutes per week, and one individual session of thirty minutes per week.

41. K.B. successfully completed the 2016-2017 school year and was promoted at the end of the 3rd grade into the 4th grade in June 2017.

42. From August 2017 until January 2018, K.B. attended his 4th grade class and made progress toward completing the fourth grade curriculum.

43. On December 6, 2017, S.G. was notified by Defendants that K.B. would be demoted to the 3rd grade in January 2018. S.G. objected to the plan to demote K.B. stating that K.B. was making progress in the 4th grade.

44. On January 3, 2018 Plaintiff filed a Due Process Complaint ("DPC") pursuant to the IDEA and Section 504 alleging, *inter alia*, a denial of a Free Appropriate Public Education ("FAPE") under the IDEA and seeking, among other things, an order barring Defendants from demoting K.B. from the fourth grade to the third grade in the middle of the 2017-2018 school year and thereby causing harm to K.B.'s emotional and psychological state and his ability to make meaningful academic progress.

45. The DPC was filed for the purpose of bringing an impartial due process hearing against Defendants pursuant to the IDEA and Section 504 alleging, inter alia, a denial

of a FAPE, and seeking, among other things, pendency, and determination that Defendants' action of demoting K.B. in the middle of the school year violated his rights to a free and appropriate public education (FAPE).

46. The due process complaint ("DPC") was filed on January 3, 2018 with the impartial hearing office of the New York City Department of Education ("DOE").

47. Plaintiff forwarded a copy of the DPC to Defendants through their counsel immediately after filing the DPC.

48. Under New York State Education Law §2853, the school district of the student's residence is considered the Local Educational Agency (LEA) responsible for providing the special education program and services to the student with a disability. As such, the DOE is responsible for all due process hearings for students with disabilities who reside in New York City but attend a charter school.

49. DOE designated Plaintiff's hearing as Case Number 171766.

50. K.B. was entitled to immediate implementation of his stay-put rights under 20 U.S.C. § 1415(j) as soon as the DPC was filed.

51. However, Defendants did not return K.B. to fourth grade stay put rights and S.G. was compelled to request a hearing on pendency with the impartial hearing office.

52. On February 9, 2018, a pendency hearing was held to determine the pendency or "stay put" status of K.B. before impartial hearing officer ("IHO") Lana Flame.

53. Defendants were in conversation with the DOE regarding the pendency hearing. Defendants had an opportunity to appear at the pendency hearing but did not do so.

54. On March 2, 2018, IHO Flame issued an interim order on pendency ("IOP"), establishing that K.B.'s pendency services and placement is "the fourth grade class in

Success Academy 2 with a full-time group crisis paraprofessional the related services of individual and group counseling each once a week for thirty minutes per session." (See *Mar Decl.*, Exhibit B).

On March 2, 2018 and on multiple dates after the issuance of the IOP, Plaintiffs' attorney inquired with Defendants' counsel as to whether they will comply with the IOP.

55. Finally on March 9, 2018, Robert Dunn, counsel for Defendants, sent an email stating that Defendants were refusing to return K.B. to fourth grade because they believe the order is "legally erroneous and unenforceable."

56. As of the filing of this instant action, K.B. has not been returned to his stay put services and placement in fourth grade.

57. K.B. has a right to a temporary restraining order ("TRO") and injunction to enforce his pendency rights, without regard to satisfaction of the preliminary injunction factors or a specific showing of irreparable harm.

58. S.G. is not required to further exhaust her administrative remedies as there are emergency circumstances and claims for pendency enforcement need not be exhausted.

59. The demotion has taken an emotional toll on K.B. He has expressed to S.G. that he no longer wants to attend school and that he feels "bad" that he has been placed in the third grade again.

60. S.G. fears that K.B. will become more disconnected from school as he is sitting with students two years younger than he is.

11

## FIRST CAUSE OF ACTION
### (Individuals with Disabilities Education Act)

61. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 60 above as if fully set forth herein.

62. The IDEA creates a right for children with disabilities to have a free appropriate public education provided in conformity with a valid IEP.

63. The IDEA creates procedural safeguards to ensure the right to a free appropriate public education, including the right to have an IHO's decision carried out by any local educational agency that receives federal financial assistance under the IDEA.

64. Defendants' failure to carry out the interim administrative decision of the IHO is a violation of K.B.'s rights under the IDEA.

65. By the acts complained of, Defendants have caused K.B. injury, including irreparable injury, which will continue unless Defendants are enjoined from their unlawful conduct.

66. By the acts complained of, Defendants have caused K.B. and his family emotional, and psychological injury, including low self esteem, feelings of guilt and inadequacy and anxiety.

## SECOND CAUSE OF ACTION
### (Americans with Disabilities Act)

67. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 66 above as if fully set forth herein.

68. K.B. has been diagnosed with ADHD and ODD, psychological impairments which substantially limits one or more major life activities, including being able to attend, concentrate and comport one's behavior consistent to the learning environment.

69. As evidenced by his IEP and other educational records, K.B. has a record of such impairments, and is regarded as having such impairments.

70. K.B. is qualified to receive a free appropriate public education in Defendant's schools.

71. An IHO has determined that according to the IDEA K.B.'s stay put placement is at Defendant's school in the fourth grade in a general education class. Defendants have failed to provide this placement.

72. Defendants, in failing to reasonably accommodate K.B.'s disabilities by providing him with the services ordered by the IHO, and by failing to provide him with an appropriate education, have discriminated against K.B. on the basis of his disability in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12132.

73. By the acts complained of, Defendants have caused K.B. injury, including irreparable injury, which will continue unless Defendants are enjoined from their unlawful conduct.

### THIRD CAUSE OF ACTION
### (Rehabilitation Act)

74. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 73 above as if fully set forth herein.

75. Defendants are recipients of Federal financial assistance.

76. K.B. has been diagnosed with ADHD and ODD, psychological impairments which substantially limits one or more major life activities, including being able to attend, concentrate and comport one's behavior consistent to the learning environment.

77. As evidenced by his IEP and other educational records, K.B. has a record of such impairments, and is regarded as having such impairments.

78. K.B. is qualified to receive a free appropriate public education in Defendant's schools.

79. An IHO has determined that according to the IDEA K.B.'s stay put placement is at Defendant's school in the fourth grade in a general education class, but Defendants have failed to provide this as ordered by the IHO.

80. Defendants, in failing to reasonably accommodate K.B.'s disabilities by providing him with the services ordered by the IHO, and by failing to provide him with an appropriate education, have discriminated against K.B. on the basis of his disability in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12132.

81. By the acts complained of, Defendants have caused K.B. injury, including irreparable injury, which will continue unless Defendants are enjoined from their unlawful conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court:

(a) Issue a TRO and Preliminary Injunction enjoining Defendants to comply with the interim order on pendency which will provide K.B. his stay-put rights under the IDEA and ordering immediate implementation of his stay-put services as decided by the IHO, as follows:

   i. The student's pendency placement is the fourth grade class in Success Academy 2;

   ii. A full-time group crisis paraprofessional;

   iii. The related services of individual and group counseling each once a week for thirty minutes per session.

(b) Issue a Permanent Injunction and Order:

   i. Enjoining Defendants to comply with the IOP during the pendency of S.G.'s due process claim.

   ii. Ordering the relief requested as part of the TRO and preliminary injunction.

(c) Issue a declaration that the conduct alleged herein violates the IDEA, Section 504, and New York State law and the New York and U.S. Constitutions;

(d) Award the Plaintiff's reasonable attorney's costs and fees, in an amount to be determined at trial, incurred in connection with the successful prosecution of this action; and

(h) Award such other and further relief as to the Court may seem just and proper.

Dated:          March 19, 2018
                Bronx, New York

                                                Respectfully submitted,

                                                Bronx Legal Services

                                                By _____/s/_____

                                                Nelson Mar, Esq.
                                                Attorneys for the Plaintiff
                                                349 East 149th Street
                                                Bronx, NY 10451
                                                718-928-3756 (t/f)
                                                nmar@lsnyc.org